UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PT. JAWAMANIS RAFINASI, ET AL.                    CIVIL ACTION

VERSUS                                            NUMBER 09-7490

COASTAL CARGO COMPANY, INC.                       SECTION "L" (3)

ORDER & REASONS

Before the Court is third-party defendant Babcock & Wilcox Power Generation Group,

Inc.'s ("B&W") Motion for Summary Judgment.  (R. Doc. 28).  The Court has received and

reviewed briefs from the parties, as well as considered the applicable facts and law, and is now

ready to rule.  For the following reasons IT IS ORDERED that B&W's Motion is DENIED.

I.       BACKGROUND

This suit arises out of alleged damage to a boiler unit.  On or about November 11, 2008,

cargo consisting of machinery, including a boiler unit manufactured by B&W, owned by plaintiff

Pt. Jawamanis Rafinasi, and insured by plaintiff XL Specialty Insurance Co. (collectively

"Plaintiffs"), was delivered by B&W via railcar to defendant Coastal Cargo Company, Inc.

("Coastal") at its terminal in New Orleans, Louisiana.  At the terminal, Coastal off-loaded the

boiler unit from the railcar and stored it on its premises pending the arrival of the M/V

RICKMERS DALIAN for overseas transportation.  Some time between November 11, 2008, and

December 1, 2008, Coastal placed the boiler unit on a MAFI trailer for the purpose of

transporting the boiler unit from its warehouse to the M/V RICKMERS DALIAN for loading

aboard the vessel.  On December 1, 2008, while Coastal was transporting the boiler unit at its

terminal on the MAFI trailer, pulled by a semi-truck, it is alleged that Coastal's driver turned the

1

trailer, causing the boiler unit to fall and suffer the damage at issue.

On December 1, 2009, Plaintiffs filed the present suit against Coastal alleging the damage to the boiler was caused by Coastal's negligence and alleging Coastal is liable for breach of warranty and/or breach of contract.  (R. Doc. 1).  Plaintiffs seek damages in the amount of $284,415.00, plus survey fees, legal interest, and costs.  Coastal filed an Answer denying many of Plaintiffs' allegations and raising several affirmative defenses.  (R. Doc. 3).

On December 16, 2010, Coastal filed a Third-Party Complaint against B&W alleging B&W, as the party responsible for manufacture and shipment of the boiler unit, caused or contributed to the damages to the boiler unit.  (R. Doc. 15).  Specifically, Coastal claims B&W negligently failed to warn or provide instructions or drawings to Coastal regarding the proper lifting, loading, or securing of the boiler.  B&W filed an Answer, denying liability on the basis that the damage to the boiler was the sole fault of Coastal.  (R. Doc. 25).

## II.    PRESENT MOTION

B&W filed the present Motion (R. Doc. 28) seeking summary judgment in its favor on the basis that there exist no genuine issues of material fact demonstrating any liability on its part for the damage to the boiler unit; rather, the facts unequivocally show Coastal is solely responsible for this damage.  According to B&W, the deposition testimony demonstrates Coastal was independently negligent in handling the boiler, particularly that Coastal employees knew the boiler was top heavy and heavier on one side, yet chose to place the boiler on the MAFI in a manner which put it at risk of damage, and these same employees provided instructions to their co-workers to not turn the MAFI while it carried the boiler, yet they did so causing the boiler to fall and suffer damage.  B&W refutes any responsibility for this damage, claiming it delivered

the boiler to Coastal free of damage and it was not involved with the unit at the time it was damaged or in Coastal's control.  In response to Coastal's allegation that B&W's failure to provide labels and instructions for the boiler was the cause of the damage, B&W argues these omissions were not substantial factors causing the damage as required for liability since the Coastal's employees knew about the boiler's weight and center of gravity issues, these issues were obvious, and Coastal did not request any such labels and/or instructions.

Coastal filed a Response in opposition to B&W's Motion.  (R. Doc. 30).  Coastal asserts summary judgment is inappropriate given that genuine issues of material fact exist as to whether B&W is responsible for the damage to the boiler unit.  Specifically, Coastal claims that because its employees lacked the requisite knowledge for proper handling of the boiler unit, while B&W possessed such knowledge, B&W owed a duty to Coastal to provide appropriate labeling and handing instructions, which B&W breached.  Coastal supports its argument with the affidavit and expert survey report provided by Michael Loper who opines B&W's omissions in labeling and instructing were the cause of the damage.  Additionally, Coastal notes that no eyewitness to the boiler falling off the MAFI has been deposed yet, and claims on this basis the present Motion is premature.

B&W filed a Reply in further support of its Motion.  (R. Doc. 32).  B&W contends therein that it had no duty to provide Coastal with instructions and labeling because, as indicated by the depositions of Coastal employees, Coastal was or should have been aware of the boiler's particular weight and center-of-gravity issues, as well as any special handling, lifting, and/or transporting these issues required.  B&W criticizes the expert survey report submitted by Coastal as "obviously biased and deficient."  Finally, B&W notes that no eyewitnesses to the boiler

3

falling off the MAFI have been deposed because the designated eyewitness did not show up at his scheduled deposition.

## III.   LAW & ANALYSIS

### A.   Standard of Review

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

### B.   Negligence

The claims by Coastal against B&W in the Third-Party Complaint arise under negligence.  Pursuant to Louisiana law, which the Court is obliged to apply as a district court sitting with diversity jurisdiction, negligence is examined under a duty-risk analysis.  The relevant inquiries of this analysis are: "(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm? (2) What, if any, duties were owed by the respective parties? (3) Whether the requisite duties were breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? (5) Were actual damages sustained?" *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004)(citing *Pitre v. La. Tech Univ.*, 673 So. 2d 585, 589-90 (La. 1996)).  These inquiries are discussed as follows.

       1.     *Cause-in-Fact*

B&W and Coastal dispute whether there exist genuine issues of material fact as to whether B&W's failure to provide Coastal with handling, lifting, and transporting-related labels and instructions was a cause-in-fact of the damage to the boiler unit.  The Louisiana Supreme Court has characterized cause-in-fact in the context of negligence as follows,

> A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm.  The act is a cause-in-fact bringing about the injury when the harm would not have occurred without it.  While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability.  *Toston v. Pardon*, 03-1747, p. 11 (La. 4/23/04); 874 So. 2d 791, 799 (citing *Netecke v. State*, 98-1182 (La. 10/19/99); 747 So. 2d 489, 487).

"Whether an action is the cause-in-fact of harm is a factual determination that is left to the factfinder."  *Toston*, 03-1747 at p. 11; 874 So. 2d at 799.

There exist genuine issues of material fact as to whether B&W's failure to label, instruct, and/or warn Coastal regarding proper handling, lifting, and transporting of the boiler unit was a cause-in-fact of the damage.  This conclusion is largely based upon Mr. Loper's expert surveyor

report and affidavit submitted by Coastal.  *See Benoit v. L&M Bo-Truc Rentals, Inc*., 2002 WL 31640479, at *3 (E.D. La. Nov. 20, 2002)("An expert report may be used to defeat a summary judgment motion if it creates a genuine issue of material fact."); *Jacobs v. N. King Shipping, Co.*, 1998 WL 13644, at *2 (E.D. La. Jan. 15, 1998)("A plaintiff may submit expert reports and affidavits in opposition to defendant's Motion for summary judgment."); *see also Hayter v. City of Mount Vernon*, 154 F.3d 269 (5th Cir. 1998)("[Plaintiff's affidavit] satisfied his burden of submitting evidence sufficient to create a genuine issue of material fact.").  This report opines that the damage to the boiler unit occurred due to:

1. Package Boiler not being provided with markings detailing "Center of Gravity," "Lifting Points," and/or "Securing Points."

2. [B&W] personnel supplying no information whatsoever with regards to instructions on how to stow the Boiler on MAFI and secure same as well as not providing drawings or information regarding center of gravity, etc.  (R. Doc. 30-3).

The affidavit by Mr. Loper contains the same conclusions.  *See* (R. Doc. 30-2).  This report and affidavit present factual issues upon which reasonable minds could differ as to the cause-in-fact of the boiler damage.

The Court acknowledges B&W's argument that the report and affidavit are "obviously biased and deficient," but a motion for summary judgment is not the proper vehicle for weighing evidence and making credibility determinations.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)("[A]t the summary judgment state the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Agosto v. INS*, 436 U.S. 748, 756 (1978)("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented.").

B&W will have the opportunity to raise challenges to Mr. Loper's opinions pursuant to *Daubert*, cross-examination of Mr. Loper, and/or direct examination of its own expert witness(es) at trial, and if it chooses to do so, at the appropriate time the Court will make determinations as to admissibility, credibility, and weight of such evidence; even a Rule 50 ruling is a possibility.

2.     *Duty*

B&W and Coastal also dispute whether B&W, as the manufacturer and shipper of the boiler unit, owed a legal duty to Coastal, the stevedore, to warn, instruct, and/or label the boiler unit regarding the sensitivities of lifting and transporting the unit.

"Whether a duty is owed is a question of law." *Brewer v. J.B. Hunt Transp., Inc*., 09-1408, p. 14 (La. 3/16/10); 35 So. 3d 230, 240.  "When no factual dispute exists and no credibility determinations are required, the legal question of existence of a duty is appropriately addressed by summary judgment." *Boland v. W. Feliciana Parish Police Jury*, 03-1297 (La. App. 1st Cir. 6/25/04); 878 So. 2d 808, 815, *writ denied*, 04-2286 (La. 11/24/04); 888 So. 2d 231.

The Louisiana Supreme Court characterizes the duty inquiry as asking, "given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be fault?" *Pitre v. Opelousas Gen. Hosp*., 530 So. 2d 1151, 1155 (La. 1988).  Further, the Court has pronounced that "each person owes a duty to take reasonable care to avoid acts or omissions which he can reasonably foresee would be likely to injure a present or future member of society unless there is some justification or valid explanation for its exclusion." *Pitre*, 530 So. 2d at 1157.  "[T]he ease of association between the duty owed and the risk encountered is a proper focus of inquiry in finding the existence of a duty." *Socorro v. City of New Orleans*, 579 So. 2d

7

931 (La. 1991).  "Simply put, the [duty] inquiry is whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his claim."  *Faucheaux v. Terrebonne Consol. Gov't,* 615 So. 2d 289, 292 (La. 1993).  The Court will address each legal basis for duty as applied to the present matter.

The Court finds no statutorily-imposed duty on the part of B&W, nor is one urged by the parties.  With regard to a jurisprudential duty, B&W and Coastal each cite a number of cases which they claim support, respectively, the non-existence and existence of a duty on the part of B&W.  However, these cases provide little guidance to the Court because they are legally and/or factually distinguishable from the present case.  *See Ward v. Baltimore Stevedoring*, 437 F.Supp. 941, 944 (E.D. Pa. 1977)(involving freight forwarder's duty to note on bill of lading that cargo is dangerous in personal injury case filed by longshoremen); *EPN-De-Laral, S.A.V. Inter-Equip, Inc.*, 542 F.Supp. 238, 248 n.11 (S.D. Tex. 1982)(citing *Ward* in dicta for the proposition that a freight forwarder may not have a legal duty to inspect cargo); *Ionar v. Companie Naviera, S.A.*, 666 F.2d 897, 904 (5th Cir. 1978)(involving dangerous-goods liability for manufacturer under general maritime law); *Harrison v. Flota Mercante Grancolumbiana, S.A.*, 577 F.2d 968, 979 (5th Cir. 1978)(involving the duty of longshoremen to warn of dangerous products); *Tenneco Resins, Inc. v. Atl. Cargo Serv., A.B.*, 1998 WL 1517478 (S.D. Tex. 1988)(involving duty of freight forwarders and stevedores).  The Court itself finds no basis under Louisiana's negligence jurisprudence to impose a duty on a shipper to label, instruct, or warn a stevedore as to peculiarities in cargo which pose difficulties in lifting, storing, and/or transporting the cargo, posing foreseeable damage to that cargo.

Despite the lack of statutory and jurisprudential grounds to impose duty, the general

principals of negligence impose a general duty on B&W to "take reasonable care to avoid acts or omissions which [it] can reasonably foresee would be likely to injure" Coastal. *Pitre*, 530 So. 2d at 1157. Indeed, the Louisiana Civil Code provides "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. The Court declines, however, to find that B&W owes a duty as specific as that urged by Coastal. Based upon the facts presented, B&W's responsibilities regarding the boiler unit were to properly manufacturer it, ship it by rail, and deliver it to Coastal, who would in turn transport and load it on the vessel for Plaintiffs. B&W's responsibilities would necessarily entail that it provide the boiler unit to Coastal without problem, creating a legal relationship between B&W and Coastal, by virtue of B&W's responsibilities to Plaintiffs. Further, it is foreseeable that if B&W did not exercise reasonable care in handing-off the boiler unit, Coastal would likely be injured.

### 3.    *Breach of Duty*

Although the Court finds that B&W owes a duty of reasonable care to Coastal, there are genuine issues of material fact as to whether this duty has been breached. The Louisiana Supreme Court characterizes the breach of duty inquiry as asking, "did [the defendant's] conduct fall short of the standard," *Pitre v. Opelousas Gen. Hosp*., 530 So. 2d 1151, 1155 (La. 1988), or put another way, breach of duty occurs when a "defendant fail[s] to conform his conduct to the appropriate standard." *Roberts v. Benoit*, 605 So. 2d 1032 (La. 1991). "[W]hether [a] defendant has breached a duty is a question of fact." *Brewer v. J.B. Hunt Transp., Inc*., 09-1408, p. 14 (La. 3/16/10); 35 So. 3d 230, 240. Here, reasonable minds could differ as to whether B&W's failure to label and/or instruct constituted a breach of its duty of reasonable care owed to Coastal. This

may well depend on what B&W and/or Coastal knew and when it/they knew of it.

> 4.    *Other Negligence Factors*

B&W fails to address and raise challenges to the other requirements for negligence in its briefing, particularly, scope of duty and damages.  B&W bears the burden of establishing its right to summary judgment, *see Celotex Corp. v. Catrett,* 477 U.S. 317, (1986)("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion."), and thus, the Court need not address the remaining negligence requirements at this juncture.

### C.    Prematurity

B&W also challenges Coastal's argument that summary judgment is inappropriate at this time because no eyewitness to the accident has been deposed yet.  The issue of whether the present Motion is premature because this deposition had not occurred is rendered moot given the Court's denial of the present Motion.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that B&W's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana this 29th day of June 2011.

_____
U.S. District Judge